IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOSEPH GRICCO, et al. | * |
| | * |
| v. | *   Civil No. JFM-04-1854 |
| | * |
| CARVER BOAT CORP., LLC | * |
| . | * |
| | ***** |

MEMORANDUM

Plaintiffs, Barbara and Joseph Gricco ("the Griccos"), are the disgruntled purchasers of a $562,940 yacht manufactured by defendant Carver Boat Corp., LLC ("Carver"). They have brought this action against Carver, asserting various causes of action. Now pending before me are cross-motions for summary judgment on four of those claims: breach of contract; breach of implied warranty of fitness for a particular purpose; breach of express warranty; and violation of the Maryland Products Guaranty Act, MD. CODE ANN., COM. LAW § 14-401, *et seq*. For the reasons that follow, Carver's motion will be granted and the Griccos' motion will be denied.

I.

The Griccos purchased their yacht in January 2001 from McDaniel Yacht Basic, Inc. ("McDaniel"), an independent marine dealer located in Maryland. McDaniel had purchased the yacht wholesale from Carver in 2000. Upon their purchase the Griccos were provided with a warranty from Carver that guaranteed it would repair any defective features or workmanship on the yacht within a limited time period. Over the past four years the Griccos have identified numerous problems with the yacht, including "listing" (leaning to one side), leaking, and mildewing. Carver

1

has made several attempts to fix these problems. However, it contends that some of the repairs were not required under the terms of the limited warranty either because the claims were not submitted in time or the problems were not defects in workmanship. Rather, according to Carver, it made the repairs in order to foster customer "good will." While the Griccos dispute these contentions and are dissatisfied with the adequacy of the repairs, they now contend that the problems stem not from defective workmanship but from design defects. Claiming that these defects have rendered the yacht non-luxurious, they have stopped using it and are attempting to sell it at a discounted price of $449,000.

In March 2004 the Griccos filed suit against Carver in Maryland state court. Carver removed the case to this court on the basis of diversity jurisdiction. The original complaint included only the four causes of action that are the subject of the pending motions. After the conclusion of discovery on those claims, the Griccos (with permission from the court) filed an amended complaint with three additional causes of action: unfair and deceptive trade practices; fraud in the inducement; and negligent misrepresentation. The parties have not yet addressed these claims.

II.

A. Breach of Contract

Having never contracted directly with Carver, the Griccos ground their breach of contract claim on the contract entered into between Carver and McDaniel in 2000. They contend they have intended-beneficiary status under the contract, arguing that Carver knew at the time it sold the yacht to McDaniel that McDaniel would resell the yacht to retail customers such as the Griccos. This contention is without merit. "[T]he fact that a seller knows that an intermediate buyer of its products

2

will immediately resell the product is not sufficient to make the ultimate buyer an intended beneficiary of the original sales contract." *Cooper Power Systems, Inc. v. Union Carbide Chem. & Plastics Co.*, 123 F.3d 675, 680 (7th Cir. 1997) (citing *Commonwealth Propane Co. v. Petrosol Int'l, Inc.*, 818 F.2d 522, 531-32 (6th Cir. 1987)). The Griccos have made no showing that Carver and McDaniel intended their contract to benefit anyone but themselves. Therefore, at best they are "mere incidental beneficiar[ies]" with no rights under the contract. *Id*; RESTATEMENT (SECOND) OF CONTRACTS § 315 (1979) ("An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee.").

### B. Implied Warranty of Fitness for a Particular Purpose

Citing Carver's advertising material that contained such taglines as "crafted to last a lifetime," and "the smart choice for spaciousness, entertaining, and all-out luxury," the Griccos claim that they purchased their yacht for the particular purpose of having a luxury watercraft. They further claim that because the yacht did not live up to its billing, Carver breached an implied warranty of fitness for a particular purpose.[1] The problem with this claim is that there was no such warranty. Under Maryland law, the Griccos's purpose in purchasing their yacht was not "particular." A "'particular purpose' differs from the ordinary purpose for which the goods are used in that it

---

[1] Such a warranty arises:
> [w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

MD. CODE ANN., COM. LAW § 2-315(1).

envisages a *specific use by the buyer which is peculiar* to the nature of his business . . . ." *Id*. § 2-315 cmt. 2 (emphasis added). An "ordinary purpose," in contrast, is that "envisaged in the concept of merchantability and go[es] to uses which are customarily made of the good[] in question." *Id*. Here, the Griccos have presented no evidence that differentiates them from the typical yacht consumer. As evidenced by the very advertisements the Griccos use to support their claim, the "ordinary purpose" of a Carver yacht is luxury pleasure boating.

Moreover, it is in rare circumstances only that a manufacturer would even know of a retail customer's "particular purpose" for the good being purchased. *See* MD. CODE ANN., COM. LAW § 2-315 cmt. 4 ("Although normally the warranty will arise only where the seller is a merchant with the appropriate "skill or judgment," it can arise as to non-merchants where this is justified by the particular circumstances."); *Bond v. NIBCO, Inc.*, 623 A.2d 731, 736 (Md. Ct. Spec. App. 1993). No rare circumstances existed here. All of the Griccos' purchase-related dealings were with McDaniel, and there is no allegation that they contacted Carver until after their yacht was delivered. Thus, even if the Griccos had a legally cognizable particular purpose for their yacht, Carver was not aware of it.[2]

---

[2] The Griccos also assert that their limited warranty assured the yacht's "fitness for a particular purpose." Compl. ¶ 29. The warranty makes no such guarantee. Instead, it says only that to the extent there were any implied warranties, they "are limited in duration to the applicable period of this written warranty . . . ." Because no implied warranty of fitness for a particular purpose existed, however, that provision of the limited warranty is irrelevant.

C. Express Warranty

The Griccos also claim that Carver made and breached two express warranties concerning the quality of its yachts. The first express warranty allegedly was created by the limited warranty Carver provided with the yacht, the second by Carver's advertising materials. Neither of the Griccos' claims is valid.

Express warranties are created when a seller makes any affirmation of fact or promise, or provides a description or sample of the goods, that becomes a basis of the bargain between the seller and buyer. WIS. STAT. § 402.316(1).[3] In this case, the limited warranty concerns only Carver's obligation to repair the Griccos' yacht; it does not make any guarantee about the yacht's quality. The Griccos, however, do not base their claim on a supposed failure by Carver to make repairs. Instead, their claim is that when delivered, the yacht "did not conform to the recognized standard specifications for seaworthiness of marine construction in the industry." Compl. ¶ 29. While that may be true, the limited warranty made no promise to the contrary.

The Griccos further allege, for the first time in their memoranda, that they purchased their yacht in reliance on express warranties of quality contained in Carver's advertising materials. Assuming that they could properly amend their complaint to cure this omission, the claim would still fail. Although statements made in advertisements may create an express warranty, "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or

---

[3] By its explicit terms, the limited warranty is governed by Wisconsin law, the state in which Carver is incorporated. Neither party mentions this fact, instead advancing their arguments under Maryland law. This discrepancy is immaterial, however, as both states' law is identical with respect to the creation of express warranties. *Compare* WIS. STAT. § 402.316(1), *with* MD. CODE ANN., COM. LAW § 2-313(1).

commendation of the goods" will not suffice. MD. CODE ANN., COM. LAW § 2-313(2); *see Rock v. Oster Corp.*, 810 F. Supp. 665, 667 (D. Md. 1991) (holding that two alleged warranties—"finest product of its kind available" and "engineered to give [an] extra measure of satisfaction"—were "merely general commendations of the product and thus are not actionable").

Here, the Griccos contend that the following advertising statements created an express warranty:

> Smartly designed. Brilliantly engineered. Crafted to last a lifetime. Carver Yachts constructs the most advanced leisure vessels in the industry. Yachts that are intelligently built to enhance your onboard living. To reflect the quality you deserve. And to provide the honest satisfaction you expect from your investment.
> …
> At Carver, we're never satisfied with building anything less than the finest luxury cruising yachts in the world. Which is why every step of construction is performed in-house with the perfect blend of artisanship and technology. All so we can closely manage and *unconditionally guarantee* a quality build, one boat at a time. You can be sure that every Carver Yacht is intelligently crafted to the highest performance and quality standards known to the industry, without compromise.[4]

All of these statements are mere puffery, reflecting Carver's opinion of its yachts and recommending them for purchase. And while the one affirmation–that Carver "unconditionally guarantee[s] a quality build"–is somewhat more specific than the others, it did not relate specifically to any of the yacht's characteristics about which the Griccos complain.

### D. Maryland Consumer Products Guaranty Act

The last cause of action at issue is the Griccos' claim that Carver violated the Maryland Consumer Products Guaranty Act. MD. CODE ANN., COM. LAW § 14-401, *et seq*. The Act serves as a gloss on warranties, forcing sellers to live up to any guarantees they attach to their products,

---

[4] Carver correctly points out that these advertising statements were actually pulled from its current website, and thus could not be the basis for an express warranty allegedly created in 2001.

6

including any written promise "to refund, repair, replace, or take other remedial action with respect to the consumer product if it proves defective in material or workmanship or fails to meet a specified level of performance." *Id*. § 14-401(d)(1)(ii). Such a promise must be "part of the basis of the bargain between the" seller and the consumer. *Id*. The obligations of a seller that makes such a guaranty are two-fold. It must fulfill the terms of the guaranty "[w]ithin a reasonable time; and [f]or the stated period of the guaranty . . . ." *Id*. § 14-404(1)(i)-(ii). A consumer may sue a seller that fails to satisfy the Act's requirements, but is limited to three forms of relief: an injunction requiring the seller to fulfill the guaranty; compensation for "all reasonable incidental expenses incurred as a result of the breach"; and attorneys fees and costs. *Id*. § 14-407(c)-(d). Though the limited warranty's repair guaranty places Carver under the obligations of the Act, the Griccos have not stated a valid claim.

First, when read as a whole, the crux of their complaint is that the yacht's problems are the result of design defects that cannot be fixed, as opposed to remediable defective workmanship. *See e.g.*, Compl. ¶ 17 (stating that Carver's experts disclosed during depositions that the problems with the yacht "were not defects in material and workmanship at all, but instead, were an inherent part of the [yacht]").[5] To be sure, in making this claim they allege explicitly that Carver "has failed and refused to repair the malfunctioning and defective features of the Boat within a reasonable time." *Id*. ¶ 33. But everywhere else within their complaint and throughout their briefs they concede that Carver has responded to their warranty claims. *See e.g.*, *id*. ¶ 14 ("Carver has tendered repairs with

---

[5] Indeed, the three additional claims the Griccos added when they amended their complaint all hinge on this allegation. Compl. ¶¶ 37-39 (alleging unfair and deceptive trade practices due to Carver's failure to disclose that the yacht's problems were "inherent in the Boat's design"); *id*. ¶¶ 40-44 (alleging fraud in the inducement of contract); *id*. ¶¶ 45-50 (alleging negligent misrepresentation).

respect to all other warranty claims raised by Plaintiffs"); Plaintiffs' Brief in Opposition at 7 (stating that they told Carver soon after they took delivery of the yacht "of the problems and then Carver undertook through to 2005—even after Mr. and Mrs. Gricco filed suit—to repair the problems under its warranty process"); *id.* at 9 (stating that Carver has "repeatedly," though "unsuccessfully," tried to repair the yacht).

Second, and more importantly, in the paragraph immediately following the allegation of Carver's failure to repair, the Griccos claim that "[i]t is not commercially practicable to repair the malfunctioning and defective features." This allegation is a further reflection of their design defect theory, and for recompense they demand that Carver provide them with a new yacht. Compl. ¶ 34. That remedy, however, is not a form of relief available under the Act. MD. CODE ANN., COM. LAW § 14-407(c)-(d). Moreover, given that they have put their yacht up for sale, and have not alleged that they incurred "reasonable incidental expenses" from Carver's actions in responding to their warranty claims, the Griccos could not recover under the Act even if they succeeded in proving Carver liable.

In conclusion, Carver is entitled to summary judgment on the four causes of action included in the Griccos' original complaint. This decision, however, is not meant to cast doubt upon the veracity of the Griccos' underlying allegation that the Carver yacht they purchased suffers from numerous problems; it only precludes them from pursuing certain avenues of relief. Whether they will succeed on the three causes of action they added to their amended complaint remains to be seen.

Date:   December 15, 2005         /s/_____

                                  J. Frederick Motz

United States District Judge